ERVIN, Justice.
This is an appeal from a final decree of the Circuit Court in and for Palm Beach County denying validation of a 2.4 million dollar pari passu water and sewer revenue bond issue.
On January 28, 1964 the City Council of the City of Boca Raton enacted Ordinance No. 824, the title of which reads:
“AN ORDINANCE AUTHORIZING THE REFUNDING OF CERTAIN OUTSTANDING WATER AND SEWER REVENUE CERTIFICATES OF THE CITY OF BOCA RATON AND AUTHORIZING THE CONSTRUCTION AND ACQUISITION OF ADDITIONS, EXTENSIONS AND IMPROVEMENTS TO THE WATER AND SEWER SYSTEM OF THE CITY OF BOCA RATON, FLORIDA; AUTHORIZING THE ISSUANCE OF $6,100,000 WATER AND SEWER REFUNDING AND IMPROVEMENT REVENUE CERTIFICATES; AND PROVIDING FOR THE RIGHTS, REMEDIES AND SECURITY OF THE FIOLDERS OF SUCH CERTIFICATES.”
This original ordinance was enacted pursuant to: Chapter 57-1144, Laws of Florida, Acts of 1957 as amended and supplemented, being the Charter of the City of Boca Raton; Section 167.431, Florida Statutes, F.S.A.; Chapter 184, Florida Statutes, F. S.A., and other applicable laws.
Section 3.04(f) of the original ordinance provided for the issuance of pari passu additional certificates and reads in part as follows:
“The term ‘pari passu additional certificates’ as used in this section shall be deemed to mean additional obligations evidenced by certificates issued under the provisions and within the limitations of this subsection payable from revenues of said Water and Sewer System and Utilities Service Taxes pari passu with Cer *795 tificates originally authorized and issued pursuant to this ordinance.”
Pursuant to the above-quoted subsection the City Council of the City of Boca Raton adopted on September 20, 1966 a supplemental ordinance authorizing the issuance of pari passu water and revenue certificates of the City of Boca Raton in the aggregate principal amount of $2,400,000. This ordinance provided for said certificates to mature over a period of thirty and one-half years from their date. Validation of these certificates was denied by the chancellor in this cause. Such denial resulted in this appeal.
In the validation proceeding below regarding the pari passu bonds, Appellees alleged that
“ * * * the petition herein is defective and the issuance of said Certificates in the manner and as provided for in the ordinance * * * authorizing the issuance thereof is illegal in that Section 7.25 [of Chapter 65-1264] * * * requires said obligations to mature within a period of ten years whereas said ordinance provides for said Certificates to mature over a period of thirty and one-half years from their date.”
The chancellor held, inter alia, that:
“ * * * the City is not authorized to issue the certificates herein sought to be validated * * * for the following reasons :
“(a) The City, under Section 7.25(a) of its Charter may only pledge utility taxes for a project which is to be financed solely from the revenues derived from such utility tax and can only be pledged for a period of ten (10) years. Because of these inconsistent Charter restrictions, the City may not validate certificates under Chapter 184, Florida Statutes.”
It was further held that the certificates could not be issued because:
“ * * * The City has failed to prove that the revenues estimated to be derived from the operation of the City’s combined water and sewer system will be sufficient to meet the requirements of the original ordinance for the issuance of additional pari passu certificates thereunder, without applying principal and interest income derived from the investment of certain proceeds of the outstanding 1963 certifi-, cates on deposit in an escrow fund, and the original ordinance does not permit the application of such funds.”
After having heard oral argument and upon deliberate consideration of the briefs of both parties, we conclude that the chancellor erred in denying validation of the proposed certificates.
Our study of the cause reveals:
1. In 1951 the Florida Legislature adopted Chapter 184, Florida Statutes, known as the “Sanitary Sewer Financing Act.”
2. In 1957 a Boca Raton Charter was enacted by the Legislature. This charter contained certain provisions concerning the issuance of bonds. Specifically, Section 126 of said Charter provided, inter alia, that
“ * * * revenue certificates as are herein provided * * * shall bear such date or dates, mature at such time or times not exceeding ten (10) years. * * * ” (emphasis added)
3. In 1959 the Legislature amended Section 184.21 by authorizing the pledge of utility taxes for the purpose of financing sewer construction. Section 184.06(1) provided, inter alia, “ * * * the bonds of each issue * * * shall mature at such time or times, not exceeding forty years from their date or dates. * * * ” (emphasis added)
4. In 1965 the Legislature adopted, by Special Act, Chapter 65-1264, a new charter for the City of Boca Raton. This new charter contained provisions concerning bond financing which are substantially and basically similar to the relevant provisions *796 in the 1957 Charter. Specifically in point is Section 7.25(d) of the 1965 Charter, which section reads in part as follows:
“ * * * revenue certificates as are herein provided * * * shall bear such date or dates, mature at such time or times not exceeding ten (10) years. * * * ” (emphasis added)
It is our judgment that Chapter 184, Florida Statutes, F.S.A., was legally available as authority for the proposed issuance.
In support of our determination we note the following legal principle:
“A later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first.” 50 Am.Jur Statutes § 553.
See also, 82 C.J.S. Statutes § 370. It is also said in 25 L.R.A., at page 194, that
“ [tjhe re-enactment by the legislature of a clause of a municipal charter after the passage of a general law in conflict therewith will have the effect of re-establishing it, if to the provision is added the clause, ‘irrespective of any general law of the state upon the subject.’ ” (emphasis added)
No such clause is affixed to the provision in question before us.
Thus in the instant cause the forty-year limit authorized by Chapter 184, Florida Statutes, F.S.A., superseded the ten-year limit set forth in the original 1957 City Charter. Reenactment of the specific provision regarding the ten-year limit (now Sec. 7.25(d) of the present charter) in 1965 is no more a modification of the Chapter 184 authorization than was the relevant provision of the original 1957 Charter. Specific legislative intent of that purpose in apt language is required for such modification.
A point further supporting legal utilization of Chapter 184, Florida Statutes, F.S.A., is found in the new City Charter of Boca Raton as adopted in 1965. Section 7.25(h) thereof is entitled “Supplemental grant of authority.” The last sentence of subsection (h) reads:
“This section is intended as a supplemental and additional grant of power to the city.”
Thus Section 7.25, with its provision in question regarding the ten-year limit on maturity dates, is obviously intended to be supplemental or additional to the power granted by Chapter 184 and not substitu-tional thereto.
As a final point on this question we are of the opinion that the Legislature in enacting the 1965 Charter for the City of Boca Raton did not have the intent to reduce the maturity date limit of pari passu bonds issued as additional obligations to those issued pursuant to the hereinabove mentioned original ordinance. The bonds of the original ordinance had a forty-year maturity date limit, said date unquestionably authorized and provided by Chapter 184, Florida Statutes. We think the pari passu bonds here in question are governed by this same limitation, not by the ten-year limit as contended by the Appellees and held by the chancellor. Appreciation of this view is strengthened by consideration of the obvious purpose of allowing and providing for pari passu bonds. See State of Florida v. City of West Palm Beach, Fla., 197 So.2d 516 (opinion filed April 5, 1967).
We next examine that portion of the chancellor’s- decree regarding whether the revenues from operation of the proposed water and sewer system would be sufficient to meet the required per centum of annual principal and interest on the certificates— original and pari passu. We believe that the able chancellor misconstrued the purpose and effect of the language of Ordinance 824 regarding this question. Upon consideration of the entire scope of the or *797 dinance and the financial arrangements and requirements thereunder, we hold that the proposed pari passu plan does satisfy ordinance requirements on this issue.
Therefore, the decree of the chancellor is reversed.
It is so ordered.
THORNAL, C. J., and ROBERTS, DREW and O’CONNELL, JJ., concur.
THOMAS and CALDWELL, JJ., dissent.